```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 5, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
SHARAYA MEANS,                                              :
                                                            :
                               Plaintiff,                   :
                                                            :
             -v-                                            :     15-cv-4855 (KBF)
                                                            :
THE CITY OF NEW YORK, P.O. VINCENT                          :     OPINION & ORDER
LORIA, and P.O. HAROLD BRADLEY,                             :
individually and in their official capacities,              :
                                                            :
                               Defendants.                  :
                                                            :
------------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Plaintiff Sharaya Means brought this action pursuant to 42 U.S.C. §§ 1983 and 1988 against New York City Police Department ("NYPD") Officers Vincent Loria ("Officer Loria") and Harold Bradley ("Officer Bradley") and the City of New York (the "City"), alleging violation of her First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. Plaintiff alleges that her constitutional rights were violated when, on June 24, 2012, she was accosted and arrested by Officers Loria and Bradley while riding a New York City subway "D" train with several friends. (Am. Compl., ECF No. 12.)

Plaintiff alleges eight causes of action, including a claim for municipal liability against the City based on, inter alia, alleged policies, customs, and/or practices of arresting and/or assaulting witnesses to police misconduct to intimidate and silence them, arresting and/or assaulting individuals who appear to question

police authority, and charging individuals with resisting arrest to cover up for the use of excessive force.

Pending before the Court is the City's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), in which the City seeks dismissal of plaintiff's municipal liability claim. (ECF No. 22.) For the reasons set forth below, the City's motion to dismiss plaintiff's municipal liability claim is GRANTED.

I. BACKGROUND

    A. Factual Allegations[1]

Plaintiff, an African-American female, alleges that on the evening of June 24, 2012, she and several friends were present on a New York City "D" subway train while it was stopped at the West 4th Street subway station. (Am. Compl. ¶¶ 6, 13.) Plaintiff alleges that she and her friends "were suddenly accosted" by Officers Loria and Bradley, in response to which plaintiff "respectfully requested defendants' names and shield numbers." (Am. Compl. ¶¶ 14-15.) The officers became irate, refused to provide the information, and punched plaintiff, grabbed her by her hair, put her in a chokehold, and dragged her off the train. (Am. Compl. ¶¶ 16-17.) Officer Loria then threw plaintiff into the ground face first and knelt on the back of her leg. (Am. Compl. ¶ 18.) Officer Loria "deliberately handcuffed plaintiff . . . more tightly and violently than is authorized or required by proper NYPD procedure, and then forcefully twisted her arms up behind her back." (Am. Compl.

---

[1] The following facts are taken from the Amended Complaint, which the Court accepts as true for purposes of the present motion. The Court here recounts only those facts relevant to resolving the pending motion.

¶ 20.)  Although plaintiff repeatedly told the officers that her handcuffs were too tight, they refused to remove or adjust them.  (Am. Compl. ¶¶ 21-22.)

Plaintiff alleges that she was placed under arrest for resisting arrest and disorderly conduct without probable cause and in retaliation for plaintiff having requested defendants' names and shield numbers.  (Am. Compl. ¶ 25.)  Although other individuals arrested with plaintiff that had not requested defendants' names and shield numbers were released from the police precinct and issued desk appearance tickets, plaintiff was ineligible for such treatment because she had been charged with resisting arrest.  (Am. Compl. ¶¶ 27-28.)  Plaintiff was ultimately held and detained in police custody for approximately 24 hours.  (Am. Compl. ¶ 31.)  Due to the criminal proceedings against her, plaintiff subsequently lost her job as a teaching assistant and was required to make numerous court appearances over the succeeding months to defend herself.  (Am. Compl. ¶¶ 33-34.)  On March 18, 2013, plaintiff was convicted of disorderly conduct and acquitted of resisting arrest.  (Am. Compl. ¶ 35.)

Plaintiff alleges that, as a result of the foregoing events, she sustained physical injuries, emotional distress, embarrassment, humiliation, loss of income, and deprivation of her constitutional rights.  (Am. Compl. ¶¶ 24, 36.)  She seeks compensatory and punitive damages, each in the amount of $1,000,000.  (Am. Compl. ¶ 87.)

      B.    <u>Procedural Background</u>

Plaintiff commenced this action by initially filing a complaint on June 23, 2015, alleging eight claims for (1) deprivation of federal civil rights under 42 U.S.C.

§ 1983, (2) excessive detention, (3) malicious prosecution, (4) denial of her constitutional right to a fair trial and due process by fabrication of evidence, (5) excessive force, (6) First Amendment retaliation, (7) failure to intervene, and (8) municipal liability.  (Compl., ECF No. 1.)  Defendants answered the complaint on September 17, 2015.  (ECF No. 10.)  In accordance with the rules set forth in this district's Section 1983 Plan, plaintiff filed the operative Amended Complaint on October 27, 2015.  (ECF No. 12.)  The Amended Complaint is largely identical to plaintiff's initial complaint, although it supplements it with a handful of additional allegations relating to plaintiff's municipal liability claim.  (See Am. Compl. ¶¶ 78-80.)  Defendants answered the Amended Complaint on November 10, 2015.  (ECF No. 13.)

On February 2, 2016, the parties submitted a joint letter requesting that the Court endorse a briefing schedule agreed to by the parties in relation to an anticipated motion for leave to file a second amended complaint by plaintiff and a motion to dismiss pursuant to Rule 12(c) by defendants.  (ECF No. 20.)  The Court so ordered the requested schedule on February 3, 2016, which called for both parties to file their initial moving papers on February 11, 2016.  (ECF No. 21.)  In accordance with the schedule so ordered by the Court, defendants filed the pending motion for partial judgment on the pleadings pursuant to Rule 12(c), seeking dismissal of plaintiff's municipal liability claim with prejudice.  (ECF No. 22.)

Plaintiff opposed the motion on March 3, 2016. (ECF No. 25.)[2] Defendants filed their reply on March 11, 2016, and the motion became fully briefed on that date.[3]

II.   LEGAL STANDARDS

    A.   <u>Motion for Judgment on the Pleadings</u>

Rule 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard applicable to Rule 12(b)(6) motions applies to motions brought under Rule 12(c). <u>Bank of New York v. First Millennium, Inc.</u>, 607 F.3d 905, 922 (2d Cir. 2010). Thus, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor, <u>id.</u>, and a complaint may be dismissed where it fails to plead "enough facts to state a claim to relief that is plausible on its face," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." <u>Juster Assocs. v. City of Rutland, Vt.</u>, 901 F.2d 266, 269 (2d Cir. 1990) (quotation marks and alteration omitted).

    B.   <u>Municipal Liability</u>

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the

---

[2] Plaintiff did not, as anticipated, move for leave to amend her complaint on February 11, 2016. She has not subsequently requested leave to amend her municipal liability claim.

[3] The City has requested oral argument in relation to the pending motion. Because the Court's regular practice is not to hold oral argument unless it believes it would be helpful, and the Court does not believe that oral argument is necessary to aid the Court's resolution of the pending motion, that request is DENIED.

5

alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).  Municipalities and other local government units may be held liable under § 1983.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978).  To make out a colorable claim of municipal liability, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted); see Connick v. Thompson, 563 U.S. 51, 60 (2011).  "A municipal policy may be pronounced or tacit and reflected in either action or inaction."  Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011); see Ambrose v. City of New York, 623 F. Supp. 2d 454, 464 (S.D.N.Y. 2009) ("A custom need not be the result of a formal proclamation or law.").

A "custom or usage" may give rise to municipal liability where the "discriminatory practices of city officials are persistent and widespread" such that "they could be so permanent and well settled as to constitute a custom or usage with the force of law."  Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) (quotation marks omitted); see also Connick, 563 U.S. at 61.  "[B]efore the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials."  Sorlucco, 971 F.2d at 871.  Conclusory allegations that a non-supervisory official "acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient."  Missel

6

v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

III.   DISCUSSION

As discussed above, defendants seek dismissal only of plaintiff's municipal liability claim against the City, in which she alleges that Officers Loria and Bradley violated her constitutional rights pursuant to "customs, policies, usages, practices, procedures and rules" of the City and the NYPD that consist of, inter alia, "arresting and/or assaulting witnesses to police misconduct in an attempt to intimidate and silence them, arresting and/or assaulting individuals who appear to be questioning police authority, and charging resisting arrest in an effort to cover up the use of excessive force." (Am. Compl. ¶¶ 76, 82.) Defendants argue that this claim must be dismissed for failure to plausibly allege a pervasive custom, policy or practice that caused the deprivation of plaintiff's constitutional rights.[4]

Plaintiff attempts to support her claim that the officers were acting pursuant to a pervasive NYPD policy or custom based on: (1) allegations made in thirteen civil lawsuits, (2) three complaints against police officers substantiated by the Civilian Complaint Review Board ("CCRB"), (3) a verdict of acquittal of one

---

[4] Besides permitting a pervasive unlawful custom, a municipality may also be held liable for "a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." Robinson v. Town of Kent, 835 F. Supp. 2d 1, 8 (S.D.N.Y. 2011); see Simms v. City of New York, 480 F. App'x 627, 629 (2d Cir. 2012) (summary order). The Court does not address a failure to train or supervise claim because plaintiff explicitly disavowed such a theory (Pl.'s Opp. Br. at 6 n.4, 8, ECF No. 25), and, in any event, the Court does not believe that the allegations in the Amended Complaint plausibly plead such a claim.

individual in a recent criminal trial, and (4) a single statement by a senior NYPD official reported in a newspaper article. (Am. Compl. ¶¶ 77-80.)[5] Below, the Court describes each of these four categories of purported support in further detail, and explains why, even when considered in their totality and viewed in the light most favorable to plaintiff, these allegations are plainly insufficient to support a municipal liability claim capable of withstanding defendants' Rule 12(c) motion.

First, plaintiff alleges that the above-referenced customs and policies may be inferred from repeated instances of similar police conduct alleged in thirteen civil rights actions filed in this district and in the Eastern District of New York. (Am. Compl. ¶ 77.) These 13 actions were initiated between 2004 and 2014, with the underlying conduct occurring as long ago as 2003. See Berkowitz v. City of New York, 04 CV 2452 (DGT)(CLP) (E.D.N.Y.). Only four of the suits were commenced as recently as 2010. (See Am. Compl. ¶ 77.) Besides pointing to the names and docket numbers of these cases, and making the conclusory allegation that these actions involved "similar wrongful conduct," the Amended Complaint does not even attempt to explain the similarities between these cases and the incident giving rise to this suit.

---

[5] Plaintiff's opposition brief identifies a number of other materials that she asserts lend further support to an inference of the existence of an unlawful pervasive custom or policy. These include additional facts about the acquittal identified in the Amended Complaint, further instances of complaints filed with the CCRB, and several newspaper articles. (Pl.'s Opp. Br. at 7-8.) These facts are external to the Amended Complaint and there is no basis to find that they are incorporated by reference into it. The Court therefore does not consider these additional allegations because a party is not entitled to amend its pleadings through statements made in motion papers. Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). As discussed above, plaintiff had an opportunity to file a motion for leave to amend her complaint, but chose not to do so. She may not now attempt to amend through allegations contained only in her opposition brief. The Court notes, however, that even if it were appropriate to consider these new allegations in relation to defendants' motion, the Court would still conclude that plaintiff fails to plead a plausible municipal liability claim.

Second, plaintiff alleges that an unlawful custom or policy may be inferred because the CCRB has substantiated charges involving similar conduct; the Amended Complaint lists the following three examples: (1) an officer refused to give his name, drew his weapon and unlawfully issued a summons for disorderly conduct when a man challenged his authority; (2) a detective struck a man in the head with his weapon after the man questioned him and issued the man a summons for disorderly conduct; and (3) after a man accidentally bumped into a police officer, the officer arrested him and issued a summons for disorderly conduct. (Am. Compl. ¶ 78.) Plaintiff does not identify when these alleged incidents took place or provide any further context or explanation as to the factual similarities between these incidents and the events underlying this suit.

Third, plaintiff alleges that on October 9, 2015, a jury acquitted a man, after only 45 minutes of deliberations, of charges of obstructing governmental administration, disorderly conduct and resisting arrest after he called a police officer a "midget." (Am. Compl. ¶ 79.) The Amended Complaint provides no other context describing the events underlying the individual's arrest or trial.

Fourth, plaintiff alleges that a September 28, 2014 <u>New York Times</u> article reported a statement by a senior NYPD official that the NYPD tracks charges of resisting arrest as a way of identifying officers who may use excessive force. (Am. Compl. ¶ 80.) This allegation does not even attempt to make a connection to the alleged customs or policies of arresting and/or assaulting witnesses to police

9

misconduct to intimidate or silence them or arresting and/or assaulting individuals who challenge police authority.

Even assuming that plaintiff alleges a custom or practice that could support a municipal liability claim,[6] the allegations in the Amended Complaint do not create a plausible inference that any alleged unlawful custom or practice was pervasive. Connick, 563 U.S. at 61 (stating that, for a practice to constitute official municipal policy, it must be "so persistent and widespread as to practically have the force of law"). Relying primarily on allegations of the occurrence of a total of seventeen incidents—comprised of thirteen civil suits, three complaints substantiated by the CCRB, and one criminal trial acquittal—plaintiff argues that the Court may infer the existence of the alleged unlawful customs or policies that she identifies.

As stated above, the thirteen civil suits were filed over a ten-year period and involve conduct that occurred as long ago as 2003. Even if the allegations in these civil suits bore substantial similarities to this case and constituted examples of the alleged customs or policies that plaintiff identifies (something which the Amended Complaint has not demonstrated), these isolated instances spanning more than a decade would still be insufficient to plausibly allege a pervasive custom, practice or policy. See, e.g., Cruz v. City of New York, No. 15 Civ. 2265 (PAE), 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016); Tieman v. City of Newburgh, No. 13-CV-4178 KMK, 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015); Walker v. City of

---

[6] The Court seriously questions whether the alleged customs, practices or policies upon which plaintiff purports to base her claim are too generalized and overbroad to be plausible. (See Am. Compl. ¶ 76.) Plaintiff has, by alleging such broad and generalized customs and/or policies, taken an "almost impossible burden" upon herself. Rasmussen v. City of New York, 766 F. Supp. 2d 399, 408 (E.D.N.Y. 2011).

10

New York, No. 12 Civ. 5902(PAC), 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014). Moreover, of these thirteen suits, twelve were settled without any admission of wrongdoing on the part of the City. As such, these suits represent nothing more than unproven allegations that are insufficient to support a municipal liability claim. Walker, 2014 WL 1259618, at *3; RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009) aff'd, 387 F. App'x 72 (2d Cir. 2010).[7]

For several reasons, plaintiff's identification of three instances in which the CCRB substantiated civil complaints is not supportive of a pervasive unlawful custom or policy. The fact that the CCRB investigated and substantiated the charges supports the inference that the City did not acquiesce in unlawful practices, but rather condemned them. Additionally, the Amended Complaint does not even identify when these incidents occurred such that the Court would have any basis to conclude that they are indicative of an unlawful custom or policy in existence in June 2012. Based on the facts proffered in the Amended Complaint, these incidents, moreover, bear little resemblance to plaintiff's alleged experience and are not indicative of the customs or policies that she alleges. While plaintiff claims that the City and the NYPD have a policy of charging individuals with resisting arrest to cover up the use of excessive force, the three individuals whose CCRB complaints were purportedly substantiated were issued summonses for disorderly conduct (and not for resisting arrest), a charge for which plaintiff was duly convicted.

---

[7] To the extent that plaintiff relies on Fiacco v. City of Rensselaer, N.Y., 783 F.2d 319 (2d Cir. 1986), for the proposition that allegations that seven claims against a municipality were made over a five-year period are sufficient to support a municipal liability claim, that case is inapposite because the plaintiff in that case pursued a failure to train theory, which plaintiff has disclaimed here.

Plaintiff's reliance on the October 2015 acquittal of a single individual purportedly arrested and charged for calling a police officer a "midget" similarly bears little relationship to the facts alleged in this case or to the policies or customs that plaintiff alleges.  The fact that a criminal defendant was acquitted of criminal charges does not mean that the arresting officers violated the defendant's constitutional rights in arresting and charging him.  Even if factually similar, a single isolated incident is not indicative of a pervasive custom or policy.  Moreover, the Amended Complaint does not identify when the incident giving rise to this criminal case occurred, and an acquittal occurring more than three years after plaintiff's arrest is not meaningfully supportive of the existence of a pervasive custom at the time of her arrest.  Finally, the fact that jury deliberations in that case lasted for only 45 minutes has no bearing on the existence of the alleged customs or policies.

Finally, plaintiff also seeks to create an inference of a pervasive custom or policy by citing to a statement by a "senior NYPD official" in a September 2014 newspaper article that stated that the NYPD tracks charges of resisting arrest as a way of identifying officers who may use excessive force.  This statement does not support an inference that there existed a pervasive unlawful custom, policy or practice of the City or the NYPD at the time of the incident giving rise to this suit.  At the outset, the NYPD official's purported statement was made in September 2014, more than two years after plaintiff was arrested.  The statement is therefore of marginal relevance to whether an unlawful custom or policy existed at the time

that plaintiff was arrested—June 2012.  Furthermore, no inference can be drawn as to why the NYPD believes there is some correlation between charges of resisting arrest and the potential use of excessive force, see Guerrero v. City of New York, No. 12 Civ. 2916, 2013 WL 673872, at *3 n.1 (S.D.N.Y. Feb. 25, 2013), and the NYPD official's purported statement bears no relationship at all to two of the three customs that plaintiff explicitly identifies in the Amended Complaint.

In short, plaintiff's allegations of similar instances of conduct, combined with the purported statement of an NYPD official, are too generalized, isolated and attenuated to support an inference that there existed a pervasive unlawful municipal custom or policy.  The allegations are far less indicative of a pervasive unlawful custom, policy or practice than this Court addressed in Edwards v. City of New York, No. 14-cv-10058 (KBF), 2015 WL 5052637 (S.D.N.Y. Aug. 27, 2015), which, in contrast to this case, also involved a failure to train/supervise theory.  If allegations such as these were sufficient, then municipal liability claims would survive the motion to dismiss stage in all but the most unusual of circumstances.  The plausibility standards set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009), impose a higher burden than plaintiff has met here.  Her municipal liability claim must therefore be dismissed.  Because plaintiff has not sought leave to amend, and the Court has no reason to believe that amendment would not be futile, see Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002), the Court's dismissal of this claim is with prejudice.

IV.  CONCLUSION

For the reasons set forth above, the City's motion for partial judgment on the pleadings is GRANTED.  Plaintiff's claim alleging municipal liability against the City pursuant to 42 U.S.C. § 1983 is dismissed with prejudice.

The Clerk of Court is directed to close the motion at ECF No. 22.

SO ORDERED.

Dated:    New York, New York
          April 5, 2016

                                          _____
                                              KATHERINE B. FORREST
                                          United States District Judge