UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
    SHARAYA MEANS,

                    Plaintiff,

              -v-

    THE CITY OF NEW YORK, P.O. VINCENT
    LORIA, and P.O. HAROLD BRADLEY,
    individually and in their official capacities,

                    Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 8, 2016

15-cv-4855 (KBF)

<u>MEMORANDUM
DECISION & ORDER</u>

KATHERINE B. FORREST, District Judge:

On July 15, 2016, the parties in this 42 U.S.C. § 1983 action informed the Court that they had reached a settlement in principle. (ECF No. 30.) Plaintiff, however, has refused to sign the settlement papers. (ECF Nos. 32, 36 at 2.) Now before the Court is defendants' August 25, 2016 motion to enforce the settlement agreement (ECF No. 35), which is essentially unopposed by plaintiff (ECF No. 38). The Court hereby GRANTS defendants' motion (ECF No. 35) as unopposed and for the reasons set forth below.

I.    BACKGROUND

On June 23, 2015, plaintiff commenced this action against the City and Officers Bradley and Loria, alleging eight claims: (1) deprivation of federal civil rights under 42 U.S.C. § 1983; (2) excessive detention; (3) malicious prosecution; (4) denial of her constitutional right to a fair trial and due process by fabrication of

evidence; (5) excessive force; (6) First Amendment retaliation; (7) failure to intervene; and (8) municipal liability. (ECF No. 1.) On September 18, 2015, the case was automatically placed in this district's "1983 Plan" for mediation. (ECF No. 11.) Mediation was unsuccessful. (ECF Nos. 15, 17.) In January 2016, the Court removed the action from the Plan, held a conference and put the parties on a litigation track. (ECF Nos. 16, 19.)[1]

The parties commenced settlement discussions in late June 2016.[2] (ECF No. 37 ("Aribakan Decl.") ¶ 6.) On or around June 30, 2016, counsel for both parties telephonically discussed the possibility of settling the case for $14,000, inclusive of attorney's fees. (Id. ¶¶ 6-7.) On or around July 13, 2016, defense counsel contacted plaintiff's counsel and informed her that her client would settle on those terms. (Id. ¶ 8.) The next day, defense counsel emailed plaintiff's counsel, "Here are the settlement papers for your review." (ECF No. 37-1 at 1.)

On July 15, 2016, plaintiff's counsel emailed defense counsel informing her that her client had "texted [her] very late last night to accept" the $14,000 settlement, and she therefore had authority to settle on those terms. (Aribakan Decl. ¶ 9; ECF No. 37-1 at 1.) Plaintiff's counsel further expressed, "We're settled",

---

[1] On April 5, 2016, the Court dismissed with prejudice plaintiff's municipal liability claim against the City (ECF No. 28) and, following a status conference, ordered the parties to report on the status of the case not later than July 15, 2016 (ECF No. 29).

[2] The facts surrounding this round of settlement discussions are set forth in a declaration of Suzanne E. Aribakan, Senior Counsel in the Office of Corporation Counsel of the City of New York, and an exhibit thereto. (ECF No. 37.) Plaintiff does not contest the facts described in this declaration.

and the two lawyers continued to confer by email about finalizing the settlement in writing. (ECF No. 37-1 at 1.) That same day, the parties informed the Court that they had "settled in principle". (ECF No. 30; <u>see also</u> ECF No. 37-1 at 1 ("If you could, please write to the Court to indicate that we settled in principle.").)

On August 11, 2016, however, plaintiff's counsel informed defense counsel that her client "refuse[d] to sign the settlement papers." (ECF No. 37 ¶ 11.) On August 12, 2016, defendants informed the Court of this development, advised that they intended to file a motion to enforce the July 15, 2016 settlement. (ECF No. 32.) Defendants filed the motion shortly thereafter. (ECF No. 35.) On August 26, 2016, plaintiff's counsel filed a letter in response to the motion stating that she had been unable to "locate any case law whatsoever that would allow [her] to argue that an oral settlement agreement, in which the attorney had actual authority from the client, should not be enforced." (ECF No. 38.) Plaintiff's counsel specifically noted that defendants' citation to <u>Delgrosso v. City of New York</u>, No. 11-cv-4876 (MKB), 2013 WL 5202581 (E.D.N.Y. Sept. 13, 2013) informed her position. (<u>Id.</u>)

II.     LEGAL STANDARD

Although "[i]t is axiomatic that the decision to settle a case rests with the client", an attorney acting with actual or apparent authority may enter into a settlement agreement on behalf of his client. <u>In re Artha Mgmt., Inc.</u>, 91 F.3d 326, 329 (2d Cir. 1996) (citations omitted). It is presumed that an attorney-of-record who executes a settlement had authority to do so unless the party challenging the

3

settlement proves otherwise. Id. (citing, inter alia, United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993)).

Under New York law,[3] "[a] settlement agreement is a contract that must be construed in accordance with general principles of contract law." In re World Trade Ctr. Disaster Site Litig., 754 F.3d 114, 121 (2d Cir. 2014) (citing Collins v. Harrison–Bode, 303 F.3d 429, 433 (2d Cir.2002)). New York law recognizes oral settlements as fully binding, even if the parties intend to commit their agreement to writing but never do so, Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985), and even if a party has a "change of heart" about the settlement before a writing materializes, Powell v. Omnicom, 497 F.3d 124, 129 (2d Cir. 2007). If, however, the parties do not intend to be bound absent a writing, they will not be bound until that time. Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 508 (2d Cir. 1998) (citation omitted); Powell, 497 F.3d at 129 (citation omitted). To determine "whether the parties intended to be bound in the absence of a writing", this Court examines four factors: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement

---

[3] "It is unclear whether the settlement of federal claims is governed by New York law or federal common law." Powell v. Omnicom, 497 F.3d 124, 129 n.1 (2d Cir. 2007). The Second Circuit has repeatedly "declined to decide this question because New York law and federal common law [a]re materially indistinguishable" in this area. Id. (citing Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir. 1997)). Neither of the parties have raised this issue. Therefore, this Court applies New York and federal common law "interchangeably" as in Powell and Ciaramella. See id.

at issue is the type of contract that is usually committed to writing." Powell, 497 F.3d at 129 (citing Winston, 777 F.2d at 80; Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 323 (2d Cir. 1997)). "'No single factor is decisive, but each provides significant guidance.'" Id. at 129-30 (quoting Ciaramella, 131 F.3d at 323).

III. DISCUSSION

The parties do not dispute that they entered into an oral settlement agreement on July 15, 2016. (See Aribakan Decl. ¶¶ 6-9.) They likewise do not dispute that plaintiff's counsel had the requisite authority to enter into this agreement on her client's behalf. See In re Artha Mgmt., Inc., 91 F.3d at 329 (discussing standards for actual and apparent authority). At a minimum, plaintiff's text message to her lawyer "to accept" the settlement agreement conferred apparent authority on her lawyer to settle the case. (See ECF No. 37-1 at 1.) Plaintiff's counsel has also made a submission in response to this motion indicating that she had actual authority to settle, and there is nothing in the record contrary to this representation. (See ECF No. 38 (describing present situation at one "in which the attorney had actual authority from the client").)

The only question remaining is whether the parties intended to be bound by their oral settlement agreement. Plaintiff's counsel submits that she is unaware of any case law suggesting that at an oral settlement agreement entered into with actual authority "should not be enforced". (Id.) Having weighed the four factors identified by the Second Circuit in Winston, 777 F.2d 78 (2d Cir. 1998), this Court

finds that the agreement is certainly enforceable. All four of the Winston factors counsel in favor of enforcement.

First, neither party carved out an express reservation of the right not to be bound by counsels' telephone conversation on July 15, 2016, a fact that is "frequently the most important" in the Winston analysis. See Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005) (citing Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 549 (2d Cir. 1998)). To the contrary, shortly following their initial conversation, and before the settlement papers were signed, the parties' lawyers exchanged emails confirming that their clients were committed to settling. (See ECF No. 137-1 at 1.) Most tellingly, on July 15, 2016, plaintiff's counsel relayed that her client had "accept[ed]" and stated flatly, "We're settled"—even though, in the next sentence, she acknowledged that the settlement papers sent by defense counsel had yet to be executed. (Id.) In response, defense counsel expressed that the parties were "settled in principle". (Id.) These definitive statements demonstrate that both sides intended to be bound at the outset, notwithstanding plaintiff's subsequent refusal to sign the settlement agreement. See Winston, 777 F.2d at 80 (explaining that the "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution.").

Second, despite defendants' suggestion otherwise (see ECF No. 36 at 4-5), defendants partially performed some of their obligations under the settlement agreement. On July 15, 2016, plaintiff filed a letter on behalf of both parties "advis[ing] the Court that the [case] ha[d] been settled in principle." (ECF No. 30.)

6

Courts have found that "conduct designed to secure the dismissal of a case"—including drafting settlement papers and apprising the Court of a settlement—"constitutes partial performance" thereof.  <u>Galanis v. Harmonie Club of City of New York</u>, No. 13-cv-4344 (GHW), 2014 WL 4928962, at *9 (S.D.N.Y. Oct., 2, 2014) (finding partial performance of a settlement agreement because "counsel for Defendants filed a letter on behalf of both parties informing the Court of the parties' settlement agreement and requesting that the case be dismissed with prejudice."); <u>see also</u> <u>Jackson v. New York City Dep't of Educ.</u>, No. 10-cv-9193 (DLC), 2012 WL 1986593, at *3 (S.D.N.Y. June 4, 2012) (finding partial performance of a settlement agreement where parties "prepar[ed] and exchang[ed] draft settlement documents, and most significantly, communicated the settlement to the Court); <u>Marino Inst. of Continuing Legal Educ., Inc. v. Issa</u>, No. 12-cv-4320 (KPF), 2013 WL 6723614, at *6 (S.D.N.Y. Dec. 20, 2013) (finding partial performance where the parties "jointly represented to the Court that they had settled the case.").

    Third, there is no dispute that the material terms of the settlement agreement were finalized.  The parties expressly discussed the most important terms—the overall sum and treatment of attorneys' fees—on the phone in their initial conversations.  (Aribakan Decl. ¶¶ 6-9.)  The draft settlement papers likely further memorialized the specifics of how settlement would work.  There is no evidence of <u>any</u> disagreement among the parties as to the terms of the settlement. <u>See</u> <u>Jackson</u>, 2012 WL 1986593, at *3.  And there is likewise no suggestion that either side continued to negotiate any of the terms in the draft settlement

agreement.  See Vacold LLC v. Cerami, 545 F.3d 114, 129 (2d Cir. 2008) (upholding enforcement of settlement agreement because there was "no evidence from which [the Court] could conclude that the parties left material terms of their agreement open to further negotiation"); Powell, 497 F.3d at 130 (finding a lack of "points remaining to be negotiated" signaled intent to be bound); Winston, 777 F.2d at 82-83 (finding counsels' "insist[ence] on continually redrafting the specific terms of a proposed agreement" signaled no intent to be bound).  Indeed, the "all that remained to be done was to sign what had already been fully agreed to."  See R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 76 (2d Cir. 1984) (citations omitted).

Fourth, and finally, although settlement agreements in general are a "type of contract that is usually committed to writing", Winston, 777 F.2d at 80, courts analyze the fourth Winston factor by evaluating the "complexity" of the particular settlement agreement at issue, Ciaramella, 131 F.3d at 326.  The City routinely settles claims using standard, straightforward settlement agreements.  See Milner v. City of New York, No. 10-cv-9384 (JGK)(GWG), 2012 WL 3138110, at *5 (S.D.N.Y. Aug. 2, 2012) (Report and Recommendation), adopted by No. 10-cv-9384 (JGK), 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012) (observing that "it is common knowledge that the Corporation Counsel typically prepares a stipulation and order of settlement in the form that was presented to plaintiff."); Oparah v. New York City Dep't of Educ., No. 12-cv-8347 (JGK)(SN), 2015 WL 4240733, at *7 (S.D.N.Y. July 10, 2015) (describing draft settlement agreement as "a short, standard settlement agreement from the New York City Law Department").  Consequently,

Courts regularly enforce oral settlement agreements in cases involving the City notwithstanding the absence of a writing. Delgrosso, 2013 WL 5202581, at *9 (collecting cases).

Here, there is no reason to believe that the settlement in question was particularly complex. The agreed-upon $14,000 payment is not particularly large, see Winston, 777 F.2d at 83 (considering $62,500 to be a large sum evidencing settlement's complexity), and there is no indication that it was to be paid over a long period of time as opposed to all at once as a lump sum, see Gomez v. City of New York, No. 13-cv-1822 (VSB), 2015 WL 1402193, at *7 (S.D.N.Y. Mar. 26, 2015) (finding settlement agreement "not sufficiently complex so that it would usually be committed to writing" because "the agreement only involve[d] a single-sum, one-time payment to [plaintiff] from the City, in exchange for [plaintiff] dismissing his claims against the City."). Additionally, the speed with which the settlement papers were drawn up—a draft was circulated only a day after counsel first discussed the settlement's terms—suggest the settlement was modeled after the City's standard agreements. In any event, even if the agreement could be construed as "complex", it was essentially committed to a writing because its terms were spelled out in draft form; all it lacked was the signature. See Delgrosso, 2013 WL 5202581, at *9 (reasoning that settlement of 42 U.S.C. § 1983 claim against the City was of the type usually committed to writing because "the agreement was in fact committed to a fully-agreed writing, albeit not signed.").

Accordingly, the Court agrees with both sides that plaintiff's counsel had the requisite authority to settle on behalf of her client and that the parties intended to be bound by the oral settlement agreement initially entered into on July 15, 2016, even though the parties never signed the draft settlement papers. Plaintiff cannot evade this binding settlement simply because she had a "change of heart" somewhere along the way. See Powell, 497 F.3d at 129.

IV. CONCLUSION

For the foregoing reasons, Court hereby GRANTS defendants' motion to enforce the settlement agreement (ECF No. 35).

The Clerk of Court is directed to terminate the motion at ECF No. 35 and to terminate the case.

SO ORDERED.

Dated:   New York, New York
         September 8, 2016

                                           _____
                                           KATHERINE B. FORREST
                                           United States District Judge